## **AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT**

I, James F. Loomis, being duly sworn, depose and state as follows:

### **Affiant Background and Purpose of Application**

1. I am a Task Force Agent (TFA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and I have been since September 2023. In my capacity as a TFA, I am familiar with the federal laws relating to the acquisition, possession, and transfer of firearms and the distribution of, possession with the intent to distribute, and conspiracy to distribute controlled substances. I have been trained in the investigation of violations of those laws, and I have participated in many such investigations. I am also a Border Patrol Agent (BPA) Intelligence (Intel) [BPA-I] with the United States Border Patrol (USBP), a component of the Department of Homeland Security (DHS), assigned to the USBP Swanton Sector. I have been employed as a BPA since August 2011. I am currently assigned as a BPA-I and have been so since May 2019. My current duty station is at the Richford Station in Richford, Vermont. I received formal training to identify and investigate alien, narcotics, and firearm smuggling activities both at the United States Border Patrol Academy in Artesia, New Mexico from August 2011 to January 2012 and through regular and recurring on-the-job training and course certifications.

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of electronic devices—further described below and in Attachment A—that are currently in the possession of the Newport Police Department (NPD) and the seizure from those devices of the electronically stored information described in Attachment B. This warrant application arises from an NPD vehicle encounter with Jessica Prue and Jason Willey on April 22, 2024, and a subsequent state search warrant of the associated vehicle executed on April 23, 2024.

1

3. The devices to be searched are a Motorola cellular telephone in a camouflage case and a Motorola cellular telephone in a black case which were both seized from the vehicle occupied by Prue and Willey—and no other individuals—on April 22, 2024 (the "DEVICES"). The DEVICES are currently located at the NPD in Newport, VT. Based on my training and experience, the DEVICES have been stored in a manner such that the data contained on them are likely to remain intact and in the same condition as they were at the time of the DEVICES' seizure. The applied-for warrant would authorize the forensic examination of the DEVICES for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence narcotics and firearms offenses in which Willey and/or Prue engaged.

4. In my experience investigating smuggling offenses and firearms and narcotic possession and trafficking offenses, I have found that electronic devices such as cellular phones similar to the DEVICES were commonly used to facilitate international smuggling events and domestic trafficking of illicit narcotics and illegal firearm sales and trades. Smugglers and traffickers often use these devices to coordinate procurement, sales, transport, and distribution of their illegal commodities, as well as the distribution of proceeds related to those offenses. In my experience, traffickers often use third party applications—such as WhatsApp, Facebook Messenger, Snapchat, Telegram, etc.—such that when data are acquired from recipients of the communications or from the service providers, it may be difficult to attribute those data to a particular sender. Further, such services often use levels of encryption to protect the nefarious content and context of their communication. Examination of such electronic devices seized directly from the suspected smuggler, trafficker, or possessor of contraband can lead to attribution of those communications to the possessor(s) of the devices.

5. The information contained within this affidavit is based upon my training and experience, my own investigative efforts, and investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. The information in this affidavit is meant to set forth probable cause to believe that the violations have occurred and that evidence of them will be found on the DEVICES; it does not necessarily include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant to be direct quotations or complete descriptions.

## Probable Cause

6. Wright's Sports Supply LLC—doing business as Wright's Sports Shop at 48 Community Drive in Newport, Vermont—is a current Federal Firearms Licensee (FFL). As an FFL, Wright's Sports Shop may lawfully engage in the business of dealing in firearms, provided it maintains appropriate records and abides by legal restrictions on the transfer of firearms. One record FFLs must maintain is an accurate log (including, among other data, the make, model, and serial number) of each firearm currently in its sale inventory.

7. On April 15, 2024, at approximately 11:44 p.m. the Vermont State Police Dispatch received a motion alarm notification at Wright's Sports Shop. Law enforcement officials from the Newport Police Department (NPD), Orleans County Sheriff's Department (OCSD), and Vermont State Police (VSP) responded and arrived at approximately 11:50 p.m. They immediately noticed the glass had been broken out of the front door of the building. Law enforcement officials entered the building and noticed a glass gun case containing handguns had been shattered. Several firearms appeared to be missing from the case.

8. The owner of Wright's Sports Shop was contacted, and he arrived at the store at approximately 12:13 a.m. on April 16, 2024. The owner gave law enforcement access to a security video system that monitors the store. Trooper Richard Berlandy and other law enforcement viewed video recordings of the incident. The video showed one subject wearing boots, a large-hooded jacket, and a mask while carrying a large shopping bag and large pry bar walk to the front door of Wright's Sports Shop at approximately 11:42 p.m. The subject sat down and turned on the flashlight function on a cellular phone. The subject then attempted to pry the front door open with the pry bar. The subject was unsuccessful and instead used the pry bar to shatter the glass of the door and gain entry to the building. Once in the building, the subject used the pry bar to smash a glass case containing handguns. The subject placed several of the handguns into the shopping bag and then fled through the broken glass door at approximately 11:45 p.m. Law enforcement officials attempted to locate the subject in the immediate area, but they were unsuccessful.

9. An inventory conducted by the store owner, VSP, and ATF personnel revealed that ten handguns were missing from the glass case. Identification data for each of the stolen firearms were entered into the National Crime Information Center (NCIC). Two of the handguns discovered to be missing and entered into NCIC were a Walther Model P99 9-millimeter semi-automatic pistol bearing serial number FED1056 and a Taurus Model PT140 Millennium Pro .40-caliber semi-automatic pistol bearing serial number SVC71500.

10. At approximately 10:00 a.m. on April 16, 2024, ATF Special Agent (SA) Tam Vieth and I met with VSP Trooper David Robillard. Trooper Robillard gave us a copy of the video footage of the burglary at Wright's Sports Shop, and I have since viewed the footage.

4

11. On April 22, 2024, at approximately 10:45 a.m., NPD Sergeant (Sgt.) Nicholas Rivers was on routine patrol in the city of Newport, Vermont. Sgt. Rivers was in full uniform and operating a marked NPD police vehicle. Sgt. Rivers pulled into a parking lot for a group of apartments located at 501 Pleasant Street in Newport. Sgt. Rivers was familiar with these apartments due to previous investigations where narcotics, including cocaine base and fentanyl, were seized from individuals visiting the apartment of J.T., an individual known to NPD generally and Sgt. Rivers specifically, who has a known history of narcotics distribution. Most of those encounters and investigations took place in the fall of 2023. J.T. had moved out of the apartment in October 2023; after J.T. moved out, Sgt. Rivers and other law enforcement officers noted a decrease in narcotics-related activity in the area. Recently, Sgt. Rivers had received a tip from a concerned citizen that J.T. had moved back in at a 501 Pleasant Street apartment and that there had been a sharp increase in activities with people going in and out of the apartments.

12. After entering the parking lot, Sgt. Rivers noticed a Ram pickup truck bearing Vermont license plate 481A931 backed into a corner of the lot and concealed from the roadway. Sgt. Rivers and other NPD officers had previously encountered that vehicle during narcotics-related investigations in March 2024. On March 21, 2024, Sgt. Rivers had seen the truck parked in front of a house in Newport known to Sgt. Rivers to be a residence from which narcotics are distributed. Sgt. Rivers pulled behind the truck and observed it for an extended period, after which he witnessed Jessica Prue and J.J. (a subject known to Sgt. Rivers to distribute narcotics) exit the truck and walk away. Further observation by Sgt. Rivers revealed a third person was still in the vehicle, possibly trying to conceal herself in the front seat. Sgt. Rivers walked up to the parked truck, and the occupant attempted to cover her face. While attempting to make conversation with the woman, Sgt. Rivers was able to recognize her as Ashley Deslandes, whom

5

he knew to have an active warrant for possession of cocaine. Sgt. Rivers had Deslandes exit the truck to place her under arrest. During a search of Deslandes, Sgt. Rivers discovered three small "dab" containers (small plastic containers often used to store narcotics), and two of the three contained trace amounts of white powder that tested presumptively positive for cocaine. Further, Sgt. Rivers was aware of an NPD encounter on March 27, 2024, where officers stopped the Ram pickup truck after receiving a report that one of its occupants had told a convenience store employee that he has being held at gunpoint. When the truck was stopped, Prue was its driver. NPD ordered the three occupants out one at a time, and Prue came out first. She immediately told NPD Officer Sykes that one of the remaining passengers, David Perry, was holding the other hostage and that he had a gun. Perry came out next, and he was found to have an empty pistol holster on his right side and a "dab" container that tested presumptively positive for cocaine. J.J., the third passenger came out last. During a later consent search of the truck, officers located a M&P Shield .45-caliber pistol on the floorboard where Perry had been seated; it was loaded with six rounds, one of which was chambered. Based on those encounters, Sgt. Rivers knew the Ram pickup truck to be routinely operated by Jessica Prue. Sgt. Rivers also knew, based on those events and on prior surveillance and investigations, Prue to be a narcotics user who had often been associated with narcotics distributors and local residences from which narcotics were distributed.

13. As Sgt. Rivers approached the truck in the parking lot of 501 Pleasant Street on April 22, 2024, he noticed its two occupants appeared to be startled by his presence. Sgt. Rivers also noticed the occupants began moving items in the vehicle toward the center console of the vehicle and out of view. Sgt. Rivers pulled alongside the vehicle, not blocking its potential egress, and he recognized Jessica Prue sitting in the driver's seat and a male he did not immediately

recognize sitting in the front passenger seat. When Sgt. Rivers exited his vehicle to engage in a consensual conversation with the occupants, he saw—in plain view on the dashboard of the truck—items he believed due to his training and experience to be three "crack pipes," a type of drug paraphernalia used to smoke cocaine base.

14. Due to the totality of the circumstances, including his prior knowledge and personal law enforcement interactions with Prue and her vehicle, Sgt. Rivers believed that Prue and her passenger were preparing for or had just finished a narcotics transaction in the parking lot or in one of the apartments. Sgt. Rivers further believed that the presence of the crack pipes on the dashboard of the vehicle indicated that evidence of recent or imminent use of illegal narcotics would likely be found in the vehicle and that a search of the vehicle would likely result in the seizure of narcotics. Sgt. Rivers advised Prue that he wished to search the vehicle and that, if she did not consent to a search, he would be seizing the vehicle and applying for a search warrant. Prue declined to consent to a search, and she refused to exit the vehicle. Sgt. Rivers, who was recording the encounter with a body worn camera, witnessed the front seat passenger—later identified as Jason Willey—using two cell phones (the DEVICES) during the encounter.

15. As a heated discussion ensued between Prue and Sgt. Rivers, NPD Officer Tanner Jacobs and others responded to provide assistance. The front seat passenger, who claimed to be on a call with his lawyer on one of the DEVICES while appearing to video record the encounter with the other DEVICE, could be heard telling Prue that there was no probable cause to seize the vehicle and that they could drive off. After Prue had refused several orders to exit the vehicle, she attempted to place the transmission into drive to flee the scene. Sgt. Rivers then broke the driver's side window to gain access to the door handle and locking mechanism. Sgt. Rivers opened the driver's door and, with the assistance of other officers, attempted to pull Prue out of

7

the vehicle. Prue continued to kick and otherwise assault any officer that attempted to assist. Sgt. Rivers utilized an electronic control device ("taser") on Prue to gain compliance and ultimately pulled her out of the vehicle and onto the ground, where she was placed into handcuffs.

16. During the altercation with Prue, the front seat passenger briefly obstructed the arrest by holding onto Prue and holding up his fist at the officers threatening to strike them. NPD Officer Josh Lillis was assisting, and he recognized the passenger as Jason Willey from prior law enforcement interactions. Officer Lillis ordered Willey out of the vehicle. Willey complied without further incident and was placed into handcuffs. The cell phones he had been using—the DEVICES—remained in the vehicle. Officer Lillis then asked Willey if he could check Willey for weapons, and Willey consented. During the check, Officer Lillis felt a container in Willey's left pocket. Officer Lillis asked Willey if he could remove the container, and Willey agreed. Officer Lillis removed what he recognized as a "dab" container. Willey stated, "It probably has crack in it."

17. After Willey and Prue were secured in a police vehicle, Officer Lillis utilized his police canine partner "Ozzy" to perform a free air sniff of the Ram truck previously occupied by Prue and Willey. Officer Lillis and Ozzy have been certified by the Vermont Criminal Justice Training Council's Basic Canine Drug Detection School. Ozzy is a drug detection canine trained to detect five different drug odors: cocaine, cocaine base, ecstasy, methamphetamine, and heroin. Ozzy was last re-certified on December 13, 2023. While conducting the free air sniff, Ozzy alerted to the open driver's side window of the vehicle, indicating the presence of the odor of a drug Ozzy had been trained to detect. The truck was thereafter towed to and stored in a secured lot at the Orleans County Sheriff's Office pending investigators' application for a search warrant.

18. Sgt. Rivers applied for a search warrant to search for narcotics in the Ram truck occupied by Prue and Willey and the "dab" container found on Willey's person. Vermont Superior Court Judge Justin Jiron granted the search warrant on April 23, 2024. Sgt. Rivers and other NPD officers executed the warrant the same day and discovered the following, among other items: digital scales, hundreds of plastic sandwich bags, dozens of unused glassine wax bags, two glassine wax bags with white powder, a "rock" of suspected crack-cocaine, 6 suboxone strips, approximately 3.75 grams of crack-cocaine (inclusive of packaging), approximately 3.99 grams of powder cocaine (inclusive of packaging), and a white powder mixed with suspected marijuana in the "dab" container. Based on my training and experience, I recognize that those amounts of cocaine could be consistent with possession for purposes of consumption or with possession with intent to distribute; however, the presence of the digital scales and unused bags corroborates an intent to distribute because individual users would be less likely to weigh out individual doses for personal consumption and to possess unused bags frequently used to package drugs for distribution.

19. While searching for narcotics, Sgt. Rivers and other NPD Officers discovered three firearms in the vehicle. Two of the firearms were pistols located in the glove box of the truck in front of where Willey was seated, and they were subsequently identified through an NCIC search as pistols stolen during the Wright's Sports Shop burglary on April 15, 2024: the Walther Model P99 9-millimeter semi-automatic pistol bearing serial number FED1056 and a Taurus Model PT140 Millennium Pro .40-caliber semi-automatic pistol bearing serial number SVC71500. The third firearm discovered was a Savage .243-caliber bolt-action rifle located under the rear seat; an NCIC search did not indicate the rifle had been reported as stolen. Twelve cartridges of .243-caliber ammunition and seven cellular phones—including the DEVICES—were also found in the

9

vehicle. The high number of cellular phones is another indicator, based on my training and experience, that the occupants of the Ram were likely engaged in drug-trafficking activities.

20. Sgt. Rivers applied for and was granted an additional search warrant from Judge Jiron on April 25, 2024, authorizing the seizure of firearms, ammunition, and cellphones from the vehicle occupied by Willey and Prue.

21. On April 17, 2024, Tucker Jacobs had been arrested by NPD and found to be in the possession of another pistol which had been reported stolen by Wright's Sports Shop following the burglary on April 15, 2024. I applied for and received a search warrant under District of Vermont case number 2:24-mj-52 to examine a cellphone seized from Jacobs during that arrest.

   a. My examination of the phone's data revealed that Jacobs had been in contact with "Jason Willey" and "Jessica Prue" via Facebook Messenger on the date of the Wright's Sports Shop burglary. Although no context clearly related to the Wright's burglary was located in the conversations between Jacobs, Willey, and Prue, the communications did indicate they all three appeared to be in the general area of Derby, Vermont in the hours before the burglary and were attempting to meet up.

   b. I noted that Jacobs's cell phone connected to a Wi-Fi network labeled "Willey" numerous times between 10:00 p.m. on April 15 and 2:00 a.m. on April 16, 2024.

   c. Jacobs's phone also contained a photograph of seven pistols, which he uploaded to Snapchat at 12:37 a.m. on April 16, 2024—less than an hour after the Wright's Sports Shop burglary. One of the firearms in the photo appeared to be the H&K pistol found in Jacob's possession at the time of his arrest on April 17, 2024, which was later found to have been one of the firearms stolen from Wright's Sports Shop. Another

of the pistols in the photograph appeared to be the Walther P99 found in the glove box of the vehicle occupied by Prue and Willey on April 22, 2024, which was later found to have been one of the firearms stolen from Wright's Sports Shop. I did not observe in the photograph the stolen Taurus PT140 pistol, which was also found in the vehicle.

22. On May 9, 2024, I ran a criminal history check on Jason Willey. The resulting report indicated Willey had sustained a felony conviction in the District of Vermont in 2014 for being an unlawful user of controlled substances in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). I later examined the Judgment in a Criminal Case for District of Vermont case number 5:14-cr-00008, which indicated that Jason Willey was convicted of that offense on September 23, 2014, and was sentenced to 20 months of imprisonment. Accordingly, Willey is prohibited from the possession of firearms.

23. Based on my participation in narcotics and firearms investigations in and around Orleans County, I am familiar with Jason Willey's involvement in prior drug activities. For example, I am familiar with a controlled purchase arranged by the Northeast Vermont Drug Task Force (NEVDTF) that occurred at a residence owned and occupied by Bryanna Rooney and Thomas Rooney in Troy, Vermont during the week of January 3, 2024. A confidential informant working with NEVDTF exchanged $120 of pre-recorded currency with an individual for approximately 2.1 grams of suspected cocaine base in the kitchen of the Rooney residence. A recording device in the confidential informant's possession captured video recordings of portions of the transaction. At one point, an individual recognized by NEVDTF investigators as Jason Willey was readily visible standing at the kitchen island holding an apparent distribution quantity of suspected crack cocaine in both hands. NVDTF investigators are familiar with and able to recognize Jason Willey based on prior interactions, including an incident that occurred on or

about January 1, 2022, when Jason Willey was shot by another drug dealer in the town of Holland, Vermont. Drug paraphernalia—such as packaging materials, foil, digital scales, and tied-off baggies—was visible on the kitchen island. Two still frame images from the video recording of the controlled purchase appear below, depicting the kitchen island and the individual investigators identified as Jason Willey.

 

### Conclusion and Requests

24. Based on the foregoing, I submit there is probable cause to believe that in the District of Vermont on or about April 15, 2024, Jason Willey violated 21 U.S.C. §§ 841 and 844 by possessing with the intent to distribute controlled substances and by unlawfully possessing controlled substances and violated 18 U.S.C. §§ 922(g) and 922(j) and by possessing firearms, including a stolen firearm, while being prohibited from doing so. Further, based on the facts outlined above, there is probable cause to believe that evidence of those violations will be

located in the DEVICES. I respectfully request the issuance of a search warrant authorizing the examination of the DEVICES, further described in Attachment A, and the seizure therefrom of the data described in Attachment B.

25. Because this warrant seeks only permission to examine the DEVICES, which are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this _____ day of May 2024.

*Attested to by reliable electronic means.*
James F. Loomis, Task Force Agent
ATF


Attested to by the complainant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime video call on this /7th day of May 2024.

_____
HON. KEVIN J. DOYLE, Magistrate Judge
United States District Court
District of Vermont